# Exhibit A

# PUBLIC DEFENDER SERVICE
### FOR THE DISTRICT OF COLUMBIA

**BOARD OF TRUSTEES**

CYNTHIA D. ROBBINS
CHAIRPERSON
JO-ANN WALLACE
VICE CHAIRPERSON
THOMAS L. BOWEN
EMILIO W. CIVIDANES
CLAIRE M. JOHNSON
HANNAH JOPLING
KARL A. RACINE
JEFFREY D. ROBINSON
JOAN H. STRAND
DONALD R. VEREEN, JR.
ROBERT L. WILKINS

633 INDIANA AVENUE. N.W.
WASHINGTON, D.C. 20004

(202) 628-1200
(800) 341-2582
TTY (202) 824-2531
FAX (202) 824-2403

www.pdsdc.org

AVIS E. BUCHANAN
DIRECTOR

PETER A. KRAUTHAMER
DEPUTY DIRECTOR

December 7, 2004

Freedom of Information and Privacy Act Office
Office of General Counsel
Federal Bureau of Prisons
320 First St, NW
Washington, DC 20534

To Whom It May Concern:

Pursuant to the Freedom of Information Act, Title 5, United States Code, Section 552, I respectfully request photocopies of the following information and/or records maintained by the Bureau of Prisons within its system of records:

Names and federal register numbers of all inmates currently in the custody of the Bureau of Prisons pursuant to judgment and commitment orders of the District of Columbia Superior Court based on D.C. Criminal Code sections prohibiting certain sexual misconduct as follows:

§22-3002 (First degree sexual abuse, formerly §22-4102),
§22-3003 (Second degree sexual abuse, formerly §22-4103),
§22-3008 (First degree child sexual abuse, formerly §22-4108),
§22-3009 (Second degree child sexual abuse, formerly §22-4109), and
§22-4801 (forcible rape, carnal knowledge or statutory rape, repealed eff. May 23, 1995).

As an attorney with the Public Defender Service for the District of Columbia representing indigent D.C. defendants and inmates and requesting this information in furtherance of this representation, I respectfully request that any costs associated with this request be waived in the public interest.

Please contact me at 202-824-2720 with any questions or concerns.

Sincerely,

Lisa Guffey
Staff Attorney

# Exhibit B

# PUBLIC DEFENDER SERVICE
### FOR THE DISTRICT OF COLUMBIA

**BOARD OF TRUSTEES**

CYNTHIA D. ROBBINS
CHAIRPERSON
JO-ANN WALLACE
VICE CHAIRPERSON
THOMAS L. BOWEN
EMILIO W. CIVIDANES
CLAIRE M. JOHNSON
HANNAH JOPLING
KARL A. RACINE
JEFFREY D. ROBINSON
JOAN H. STRAND
DONALD R. VEREEN, JR.
ROBERT L. WILKINS

633 INDIANA AVENUE. N.W.
WASHINGTON, D.C. 20004

(202) 628-1200
(800) 341-2582
TTY (202) 824-2531
FAX (202) 824-2403

www.pdsdc.org

AVIS E. BUCHANAN
DIRECTOR

PETER A. KRAUTHAMER
DEPUTY DIRECTOR

December 8, 2004

Kathleen Kenney
General Counsel
Federal Bureau of Prisons
320 1st Street NW
Suite 958
Washington, DC 20534

Dear Ms. Kenney:

In light of the recent passage of the federal counterpart to D.C.'s Innocence Protection Act, D.C. Code 22-4131, *et seq.*, PDS has decided to review District of Columbia's serious sex-related convictions to explore whether post-conviction DNA testing is feasible. Our first step in this process is securing a list of all D.C. offenders convicted of serious sexual offenses and currently incarcerated in the Federal BOP.

Because the Federal BOP now houses all D.C. felony offenders pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997 (the Revitalization Act), P.L. 105-33, 1997 HR 2015, Title XI, *et seq.* we are hoping that you can assist us by providing a list of all of the D.C. offenders convicted of serious sexual offenses. I enclose a formal FOIA request we have made for that purpose, directed to your FOIA officer.

We do not feel this task will be too cumbersome, as we have spoken to BOP representatives whom have stated the information is available, we just need to formally request the list through the appropriate channels. We do not anticipate using this list in any court case and do not plan to attach it to pleadings; our request is made solely so that we can identify those cases where DNA sampling may be feasible and worthwhile.

Thank you again for any assistance you can give us in this matter. If you have any questions or concerns, feel free to contact me or to contact Lisa Guffey, the staff attorney in our division handling this project. I can be reached at (202) 824-2523.

Sincerely,


Timothy P. O'Toole
Chief, Special Litigation Division

# Exhibit C

U.S. Department of Justice

Federal Bureau of Prisons

Washington, DC 20534

Lisa Guffey, Staff Attorney             For Further Inquiry Contact:
Public Defender Service for             Federal Bureau of Prisons
  the District of Columbia              320 First Street, N.W.
633 Indiana Ave., N.W.                  Room 841, HOLC Building
Washington, D.C.  20004                 Washington, D.C.  20534

Re:  Request No. 2005-01707

Dear Mr. Guffey:

     This is in response to your December 8, 2004 Freedom of
Information Act request.  Specifically, you requested names and
federal register numbers of all inmates currently in the custody
of the Bureau of Prisons pursuant to judgment and commitment
orders of the District of Columbia Superior Court based on D.C.
Criminal Code sections prohibiting certain sexual misconduct.

     Pursuant to 28 C.F.R. §513.34(b) lists of Bureau of Prisons
inmates shall not be disclosed.  Therefore, we are withholding
this information pursuant to Title 5, U.S.C. §552(b)(7)(C).

     5 U.S.C. §552 (b)(7)(C) exempts from disclosure records or
information compiled for law enforcement purposes which could
reasonably be expected to constitute an unwarranted invasion of
personal privacy.

     Pursuant to 28 C.F.R., §16.9, this response may be appealed
to the Attorney General by filing a written appeal within sixty
days from the date of this letter.  The appeal should be
addressed to the Co-Director, Office of Information and Privacy,
U.S. Department of Justice, Flag Building, Suite 570, Washington,
D.C. 20530.  Both the envelope and the letter of appeal itself
must be clearly marked "Freedom of Information Act Appeal."

                         Sincerely,

                         Wanda M. Hunt
                         Chief, FOIA/PA Section

# Exhibit D

# PUBLIC DEFENDER SERVICE
### FOR THE DISTRICT OF COLUMBIA

BOARD OF TRUSTEES

CYNTHIA D. ROBBINS
  CHAIRPERSON
JO-ANN WALLACE
  VICE CHAIRPERSON
THOMAS L. BOWEN
EMILIO W. CIVIDANES
CLAIRE M. JOHNSON
HANNAH JOPLING
KARL A. RACINE
JEFFREY D. ROBINSON
JOAN H. STRAND
DONALD R. VEREEN, JR.
ROBERT L. WILKINS

633 INDIANA AVENUE, N.W.
WASHINGTON, D.C. 20004

(202) 628-1200
(800) 341-2582
TTY (202) 824-2531
FAX (202) 824-2403

www.pdsdc.org

AVIS E. BUCHANAN
DIRECTOR

PETER A. KRAUTHAMER
DEPUTY DIRECTOR

March 25, 2005

**FREEDOM OF INFORMATION ACT APPEAL**

Co-Director
Office of Information and Privacy
U.S. Department of Justice
Flag Building, Suite 570
Washington, D.C. 20530

Re:  Freedom of Information Act Appeal from Denial of Request No. 2005-01707,
     Made by Public Defender Service for the District of Columbia, Dated
     December 8, 2004

Dear Sir or Madam:

This is an Appeal pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. §552, from the February 9, 2005 decision of the federal Bureau of Prisons improperly refusing to disclose the names and federal register numbers of certain inmates currently in their custody pursuant to judgment and commitment orders of the District of Columbia Superior Court. The Federal Bureau of Prisons denied this request relying on exemption (b)(7)(C) of 5 U.S.C. §552, and citing 28 C.F.R. §513.34(b), which purportedly exempts lists of inmates from disclosure.

As set forth below, the public has a statutory right to the information it seeks, and there is no legal basis for BOP's withholding. Accordingly, we respectfully request that you provide the requested information expeditiously as required by FOIA.

AN EQUAL OPPORTUNITY EMPLOYER

## FACTS

### Request

On December 8, 2004, the Public Defender Service for the District of Columbia (PDS) submitted a FOIA request, via U.S. Postal Service, to the Federal Bureau of Prisons, FOIA and Privacy Act Office, for the following information and/or records:

> Names and federal register numbers of all inmates currently in the custody of the Bureau of Prisons pursuant to judgment and commitment orders of the District of Columbia Superior Court based on D.C. Criminal Code sections prohibiting certain sexual misconduct as follows:
>
> > §22-3002 (First degree sexual abuse, formerly §22-4102),
> > §22-3003 (Second degree sexual abuse, formerly §22-4103),
> > §22-3008 (First degree child sexual abuse, formerly §22-4108),
> > §22-3009 (Second degree child sexual abuse, formerly §22-4109), and
> > §22-4801 (forcible rape, carnal knowledge or statutory rape, repealed eff. May 23, 1995).

FOIA Request, dated December 7, 2004 (Attachment 1). By separate envelope, PDS submitted a photocopy of the FOIA request described above as an attachment to a letter addressed to Kathleen Kenney, General Counsel for the Federal Bureau of Prisons (BOP). The intended use of the requested information, and related public interest, was stated in the letter to the General Counsel as follows:

> In light of the recent passage of the federal counterpart to D.C.'s Innocence Protection Act, D.C. Code §22-4131, et seq., PDS has decided to review District of Columbia's serious sex-related convictions to explore whether post-conviction DNA testing is feasible. Our first step in this process is securing a list of all D.C. offenders convicted of serious sexual offenses and currently incarcerated in the Federal BOP.

Letter to General Counsel, dated December 8, 2004 (Attachment 2). On January 24, 2005, following a series of telephone conversations between PDS and BOP's FOIA office relating to the receipt and processing of these requests, both the FOIA request and the letter to the General Counsel were transmitted via facsimile to BOP's FOIA section.[1]

---

[1] Representatives of the BOP FOIA office informed PDS that all requests for information addressed to the General Counsel are forwarded to the FOIA office to be processed in accordance with FOIA.

2

## Denial

By letter dated February 9, 2005, BOP summarily denied PDS's request for information stating that "pursuant to 28 C.F.R. §513.34(b) lists of Bureau of Prisons inmates shall not be disclosed. Therefore, we are withholding this information pursuant to Title 5, U.S.C. §552(b)(7)(C)." BOP Denial dated February 9, 2005 (Attachment 3). The denial letter went on to recite that section (b)(7)(C) "exempts from disclosure records or information compiled for law enforcement purposes which could reasonably be expected to constitute an unwarranted invasion of personal privacy." Id. (citing 5 U.S.C. §552). The denial letter did not explain, however, how the identities of those whose convictions are publicly and permanently pronounced and recorded or the resulting sentences to confinement that are also publicly and permanently pronounced and recorded "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Id. Nor did the denial letter explain how the names of D.C. inmates convicted of sex-related offenses constitutes information "compiled for law enforcement purposes" within the meaning of the exemption asserted. Id. Finally, the denial letter failed to comment on the public interest in exoneration of the wrongfully convicted through post-conviction DNA testing much less balance it against the privacy interest BOP purports to protect with its decision to withhold disclosure. Id.

## Public Interest

The enormous public interest in exonerating the innocent through DNA technology is undeniable. In response to the national outcry for a re-examination of the cases of those who claim to be innocent, wrongfully-convicted, and seek exoneration, President Bush signed the federal Innocence Protection Act of 2004 (IPA) into law on October 30, 2004. Title IV of the omnibus legislation Justice For All Act of 2004, H.R. 5107. The District of Columbia passed similar legislation in 2001, which provides a post-conviction opportunity for DNA testing and relief for claims of innocence for those convicted by the D.C. Superior Court. D.C. Code §22-4131, et seq. The federal legislation signed by the President not only provides federal inmates a post-conviction relief; it also directs the Attorney General to establish a grant program "to award grants to States[2] to help defray the costs of post-conviction DNA testing." Section 412, Innocence Protection Act of 2004 ("Kirk Bloodsworth Post-Conviction DNA Testing Grant Program").

When President Bush issued his "Advancing Justice Through DNA Technology" initiative in March 2003, he explained that the grant program would "demonstrate support for appropriate post-conviction testing of DNA evidence. . .under the President's initiative to help states defray the cost of post-conviction DNA testing." p.11, Presidential Initiative "Advancing Justice Through DNA Technology" dated March 2003. The President further instructed the Attorney General to "encourage states to develop plans that ensure prompt DNA testing of persons who may be wrongly convicted" as part of the criteria state programs must meet to receive this funding. Id. at 11-12 (emphasis added).

---

[2] "State" is statutorily defined to include the District of Columbia. Section 412(c).

While the FOIA request filed by PDS is not a step toward applying for this funding, it is the first step in our attempt to begin a process the President encouraged – that of developing a plan to "ensure prompt DNA testing of persons who may be wrongly convicted." Id. The first step, as noted in the request, "is securing a list of all D.C. [Code] offenders convicted of serious sexual offenses and currently incarcerated in the Federal BOP." FOIA Request dated December 8, 2004.

Those who should benefit most directly and dramatically from the Innocence Protection Act are obviously those incarcerated pursuant to convictions for very serious offenses with long-term sentences to confinement. Yet ironically they are the least likely to have meaningful access to these new laws designed to help them or to legal consultation regarding them. The nation's outcry, the President's funding initiative, and the resulting federal and local legislation amounts to nothing if the wrongly convicted are unaware or unable to act upon their newfound right to seek relief from the courts. The public is interested in re-examining these cases and the criminal justice system that produced them. The public is entitled to know whom the government holds in its custody pursuant to offenses who could be most affected by the recent innocence protection legislation.

## ARGUMENT

"Public interest is better served by a scheme that opens up public records and information to the public and allows an informed citizenry to make its own judgments, than by a scheme that has the government apply its own filter to limit what otherwise publicly available information individuals should have." Brief of the United States to the United States Supreme Court as Amicus Curiae In Support of Petitioners at 22, Smith v. Doe, 538 U.S. 84 (2003)(No. 01-729), rehearing denied, 538 U.S. 1009(defending the constitutionality of and public interest in legislation requiring public sexual offender registration). Similarly, "'[p]ublic access to government documents' is the 'fundamental principle' that animates FOIA." Center for National Security Studies v. Dep't of Justice, 331 F.3d 918, 925 (D.C.Cir.2003) (quoting John Doe Agency v. John Doe Corp., 493 U.S. 146, 151(1989)). Disclosure under FOIA is mandatory unless the requested information falls within one of nine exemptions that are to be narrowly construed. Id. Additionally, the agency seeking exemption from disclosure bears the burden of proving its application. Id.

Without explaining how the exemption applies to the requested information, BOP simply asserts exemption 5 U.S.C. §552 (b)(7)(C) as justifying its refusal to disclose. BOP Denial dated February 9, 2005.[3] Exemption (b)(7)(C) applies to "records or information *compiled for law*

---

[3] The denial also relies on 28 C.F.R. §513.34(b), but FOIA, and not the cited regulation, controls in this case – in fact, the regulation may apply in other cases only when read consistently with FOIA and its narrow exemptions. See Brady-Lunny v. Massey, 185 F.Supp.2d 928, 931-32 (C.D.Ill 2002)(Court analyzed and held that FOIA exemption (b)(7)(C), rather than 28 C.F.R. §513.34(b) as relied upon by county sheriff, supported the withholding of a list of federal inmates some of whom "are merely witnesses and detainees who have not been charged with or convicted of crimes."). While the statutory authority relied upon by BOP in promulgating 28 C.F.R. §513.34(b) grants federal agencies the power to regulate its operations including "the custody, use, and preservation of its records, papers, and property," 5 U.S.C. §301, it "does not authorize withholding information from the public or limiting the availability of records to the public." Id (emphasis added).

*enforcement purposes*, but only to the extent that the production of such law enforcement records or information . . . *could reasonably be expected to constitute an unwarranted invasion of personal privacy.*"  5 U.S.C. §552 (emphasis added).  This exemption does not apply in this case for the following reasons:  1) the names of inmates convicted pursuant to sex-related offenses under the D.C. Criminal Code are unquestionably in the public domain; 2) the requested information was not compiled for law enforcement purposes within the meaning of the exemption asserted; and 3) even if exemption (b)(7)(C) applies to the requested information, the public interest in disclosure far outweighs any conceivable privacy interest.

## A. FOIA Does Not Exempt From Disclosure Information Already in the Public Domain

It contradicts the very logic of FOIA to apply exemption (b)(7)(C)to information within the public domain. See, Students Against Genocide, et al. v. U.S. Dep't of State, 257 F.3d 828, 836 (D.C. Cir. 2001)(". . . the logic of FOIA postulates that an exemption can serve no purpose once information … becomes public" (internal quotations and citations omitted)).  Furthermore, it is well established that none of the FOIA exemptions may be relied upon by the government to justify the withholding of information that is in the public domain. SAGE, 257 F.3d at 836 ("This circuit has held that the government may not rely on an otherwise valid exemption to justify withholding information that is already in the 'public domain.'"); see also, Cottone v. Reno, 193 F.3d 550, 554-55 (D.C. Cir. 1999)("[F]irmly anchored in our prior FOIA decisions . . .materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record).

The information requested by PDS is in the "public domain" – it is disclosed and preserved in permanent public records. SAGE, 257 F.3d at 836 ("For the public domain doctrine to apply, the specific information sought must have been 'disclosed and preserved in a permanent public record.'")(quotations and citations omitted).  The names of D.C. inmates convicted of sex-related offenses were announced in open courts and preserved in permanent records, available for public access and inspection at any time. See Cottone, 193 F.3d at 554 (every portion of the record of a public trial, unless sealed by the court, is within the public domain).  Likewise, the sentence imposed pursuant to a criminal conviction is pronounced in open court and recorded in the very same permanent public record.

Moreover, the fact that all persons sentenced to confinement pursuant to a felony conviction are transferred to the custody of the Federal Bureau of Prisons is also a matter within the public domain in the form of public legislation.  D.C. Code §24-101 [formerly §24-1201]. Even the precise BOP facility in which a particular inmate is housed, while not requested by PDS in this case, is information within the public domain and easily retrieved from the BOP's website "inmate locator." www.bop.gov.

Frankly, it is confounding that BOP, a component of the United States Department of Justice, refuses to acknowledge that the names of D.C. inmates convicted of sex-related offenses are within the public domain, especially in light of the numerous, forceful representations made by the United States to the Supreme Court in support of widely publishing this very same information. See generally, U.S. Amicus Brief in Smith, and U.S. Amicus Brief in Connecticut v. Doe, 538 U.S. 1, 21 (2003)( arguing that the identities of "sex offenders" and various other

conviction-related information are public information); see also, Smith v. Doe, 538 U.S. at 99 (holding that the names and convictions of sex offenders posted on a public internet website "is more analogous to a visit to an official archive of criminal records than it is to a scheme forcing an offender to appear in public with some visible badge of past criminality."). The various sex offender registration schemes across the nation, including the District of Columbia's, authorize wide publication of the names and convictions of so-called "sex offenders" for the purpose of "mak[ing] accessible to those citizens who choose to inquire **information already in the public domain.**" U.S. Amicus Brief in Smith at 11 (emphasis added). In fact the United States' conception of what information is in the public domain in this context reaches far beyond what is requested by PDS. The scope of what the United States deems within the public domain includes "[a] person's physical appearance, aliases, date of birth, criminal conviction information, and place of employment generally are all matters of public record or otherwise accessible to the public. . . ." Id. at fn.11.

It is undisputed that the requested information is within the public domain. Accordingly, BOP may not rely on any exemption to justify withholding the requested information and must instead disclose within the statutory timeframe.

**B.  The Requested Information Does Not Constitute Information "Compiled For Law Enforcement Purposes" Thus Failing to Meet the Threshold Requirement for Exemption (b)(7)(C).**

The names of those confined in BOP do not constitute records or information "compiled for law enforcement purposes," thus failing to meet the threshold requirement for justifying exemption under 5 U.S.C. §552b(7). The fact that BOP specializes in law enforcement does not alone cause all material within its possession and control to fall within the category of information "compiled for law enforcement purposes" exempted under FOIA.  Maydak v. Dep't of Justice, 254 F.Supp.2d 23, 38 (D.D.C. 2003)(BOP required to do more than simply assert conclusory statement that requested information is compiled for law enforcement purposes; it must supply facts sufficient to satisfy the Pratt rational nexus test.).

Any agency relying upon any of the subparts to the (b)(7) law enforcement exemption must first prove that the withheld records were compiled for law enforcement purposes. Pratt v. Webster, 673 F.2d 408, 416 (D.C.Cir.1982).  In order to meet this threshold requirement, the agency must "establish a rational 'nexus between the investigation and one of the agency's law enforcement duties,' … and a connection between an 'individual or incident and a possible security risk or violation of federal law.'"  Campbell v. Dep't of Justice, 164 F.3d 20, 32(D.C.Cir.1998)(quoting Pratt, 673 F.2d at 419). In this case, BOP does not attempt to, nor can they establish a law enforcement purpose under the Pratt rational nexus test.  Denial Letter dated February 9, 2005. The requested information – merely names of a particular category of inmates - does not in any way reveal otherwise unknown, confidential, or private information regarding a law enforcement investigation, whether it be criminal or disciplinary, external or internal.  If there is no investigation implicated by disclosing the information, there is no starting point from which to determine a rationale nexus under the first prong of the test.[4]  Similarly, there can be no

---

[4]  In fact the United States asserts that publication, not withholding, of the names and other identifying information of those convicted of certain sex-related offenses "facilitate[s] law enforcement investigations." U.S. Amicus Brief in Smith at 5 (emphasis added).

connection made between the mere disclosure of names of inmates and an identifiable security risk or violation of federal law.

Accordingly, even if the requested information were not in the public domain, BOP failed to establish that the requested information was "compiled for law enforcement purposes" within the meaning of FOIA exemption (b)(7), thus failing to meet their threshold burden. Consequently, BOP's failure to disclose based upon exemption (b)(7)(C) is unjustified.

## C. Even if BOP Could Satisfy the Threshold Requirement of Exemption (b)(7)(C), the Required Balancing of the Asserted Privacy Interest Against the Undeniable Public Interest Compels Disclosure

Finally, even if the requested information were not in the public domain and the BOP were able to meet the threshold requirement of (b)(7), reliance upon subpart (C) requires BOP to identify and balance the public versus private interests involved in disclosing the requested information. 5 U.S.C.§552(b)(7)(C); Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 776 (1989)(balancing of public interest in disclosure against the privacy interest Congress intended to protect is required in determining whether exemption applies); Computer Professionals for Social Responsibility v. United States Secret Service, 72 F.3d 897, 904 (D.C. Cir. 1996)(the privacy interests at stake and the public interest in disclosure must first be identified then balanced before deciding whether (b)(7)(C) justifies withholding) (citing Stern v. FBI, 737 F.2d 84 (D.C. Cir. 1984). The scales in this case tip heavily in favor of the public interest because there is no identified privacy interest and the substantial and time-honored public interest in examining the criminal justice process is undeniable.

First, BOP must identify the privacy interest at stake in disclosing the requested documents which they failed to do. BOP Denial. The privacy interests that are generally recognized by exemption (b)(7)(C),are those of "suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity." Dunkelberger v. Dep't of Justice, 906 F.2d 779, 781 (D.C. Cir. 1990) (quotation omitted). The PDS request is not for the names of suspects, witnesses or investigators associated with alleged criminal activity; it is simply a request for the names of those who were convicted in open court – information included in permanent public records. While BOP does not identify the privacy interest it purports to protect in this case, the United States has otherwise deemed data included in a sex offender registry, which includes names and convictions, to be "non-private information about sex offenders," U.S. Brief in Smith at 14, and that "the publication of such truthful information flowing from the fact of a prior conviction does not meaningfully implicate [the registered offender's] reputational interest." U.S. Brief in Connecticut at 14. In the District of Columbia sex offender registration includes publishing on the internet (without password or any other type of protection) not only the names and nature of conviction of those convicted of sex-related offenses but also much more private information such as private residence address and employer's address. D.C. Code 22-4001, et seq (authorizes D.C. Metropolitan Police Department to publish on the internet the name, nature of conviction, residential and employer addresses, and photograph of individuals convicted of Class A and B sex-related offenses); see http://mpdc.dc.gov/serv/sor.

In sharp contrast to the non-existent privacy interest at stake in the requested information, the public interest is substantial. The fair and just administration of criminal justice is of paramount importance to democracy in the United States, as is public access to the information relating to its operations. See Smith v. Doe, 538 U.S. at 99 ("[O]ur criminal law tradition insists on public indictment, public trial, and public imposition of sentence. Transparency is essential to maintaining public respect for the criminal justice system, ensuring its integrity, and protecting the rights of the accused. . . ."); see also, U.S. Brief in Connecticut at fn.7 ("Criminal trials and convictions are a matter of quintessential public interest.")(citations omitted). In addition to the more general public interest in criminal trials and convictions that alone would justify disclosure, this request also involves the more specific public interest in discovering the failures of the criminal justice system through DNA technology and ensuring the exoneration of wrongly convicted innocent people.

In the last decade, Americans have learned more about the past mistakes and continuing fallibility of the criminal justice system through post-conviction application of DNA technology. This technology has provided dozens of wrongly convicted individuals the ability to prove their innocence, demonstrating publicly just how fallible the criminal justice system can be. In response to the public outcry and call for a re-examination of cases of those claiming innocence, legislatures across the country have provided a judicial mechanism for post-conviction DNA testing and relief from the courts. In 2001, the District of Columbia enacted its Innocence Protection Act of 2001, D.C. Code §22-4131 et seq., providing a post-conviction DNA testing opportunity for eligible applicants. More recently, President Bush signed the federal Innocence Protection Act of 2004, which not only provides a similar federal post-conviction DNA testing opportunity, but also establishes a grant program to "help States defray the cost of post-conviction DNA testing." Presidential Initiative "Advancing Justice Through DNA Technology" dated March 3, 2004.

These bold Presidential and Legislative initiatives clearly reflect the substantial public interest in re-examining possible wrongful convictions and exonerating those who establish their innocence through DNA technology. The very individuals whose privacy the BOP claims to be protecting in this case are those who stand to benefit the most directly and dramatically from the new legislation, i.e. inmates themselves, especially those whose convictions involve biological, DNA- testable evidence. It is through their cases that the public learns about the deficiencies in the criminal justice system. BOP's withholding of the requested information is untenable and its reliance on the purported privacy interest of the inmates is misplaced.

The required balancing under exemption (b)(7)(C) clearly tips in favor of the public interest in disclosure. For this reason, *inter alia*, exemption (b)(7)(C) does not apply, and BOP improperly relies upon it to withhold the requested information.

## CONCLUSION

Because the identities of incarcerated D.C. sex offenders are within the public domain and thus not subject to withholding under any FOIA exemption, BOP should disclose the requested information. Furthermore, even if the information were not within the public domain, BOP does not, and cannot establish that the requested information falls within the exemption (b)(7) definition of material "compiled for law enforcement purposes" or that the privacy interest, if any, outweighs the substantial public interest in exonerating the innocent through DNA technology.

More than a decade has passed since the exoneration of Kirk Bloodsworth, the first to be exonerated through DNA technology in 1992. Through the years, as cases were investigated, litigated, and won, and as legislatures battled across the country and on Capitol Hill to create legal mechanisms for access to the courts on post-conviction claims of innocence, volumes of biological evidence once seized to aid in prosecution, and now critical to claims of innocence, have been lost, destroyed, compromised, and contaminated through passage of time and inadvertence as well as improper maintenance and custody. Inmates with legitimate claims of innocence must apply to the courts as soon as possible so that the biological evidence in their cases may be located, properly preserved, and ultimately tested. Time is of the essence -- a response to this appeal is expected no later than 20 days from this appeal as provided by law. 5 U.S.C. §552. Because of the importance of the public interest in re-examining possible wrongful convictions through DNA, a denial of this appeal may lead to litigation.

If there are any questions regarding this FOIA Appeal, please contact me at 202-824-2523, or Lisa Guffey, a staff attorney in the Special Litigation Division, at 202-824-2720.

Sincerely,

Timothy O'Toole
Chief, Special Litigation Division

Catharine Easterly
Staff Attorney, Special Litigation Division

Lisa Guffey
Staff Attorney, Special Litigation Division

# Exhibit E



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*

*Washington, D.C. 20530*

**APR 0 8 2005**

Lisa Guffey, Esq.
Public Defenders Service for the District of Columbia
633 Indiana Avenue NW.
Washington, DC 20004

     Re:  Request No. 2005-01707

Dear Ms. Guffey:

     This is to advise you that your administrative appeal from the action of the Federal Bureau of Prisons on your request for information from the files of the Department of Justice was received by this Office on April 4, 2005.

     The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours.  In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt.  Your appeal has been assigned number **05-1442**.  Please mention this number in any future correspondence to this Office regarding this matter.

     We will notify you of the decision on your appeal as soon as we can.  The necessity of this delay is regretted and your continuing courtesy is appreciated.

                Sincerely,

                Priscilla Jones
                Chief, Administrative Staff

# Exhibit F

# PUBLIC DEFENDER SERVICE
### FOR THE DISTRICT OF COLUMBIA

BOARD OF TRUSTEES

CYNTHIA D. ROBBINS
CHAIRPERSON
JO-ANN WALLACE
VICE CHAIRPERSON
THOMA S L. BOWEN
EMILIO W. CIVIDANES
CLAIRE M. JOHNSON
HANNAH JOPLING
KARL A. RACINE
JEFFREY D. ROBINSON
DONALD R. VEREEN, JR.
ROBERT L. WILKINS

633 INDIANA AVENUE. N.W.
WASHINGTON, D.C. 20004

(202) 628-1200
(800) 341-2582
TTY (202) 824-2531
FAX (202) 824-2791

www.pdsdc.org

AVIS E. BUCHANAN
DIRECTOR

PETER KRAUTHAMER
DEPUTY DIRECTOR

May 23, 2005

Priscilla Jones
Chief, Administrative Staff
United States Department of Justice
Office of Information and Privacy
Flag Building, Suite 570
Washington D.C.  20530
**BY FAX: (202) 514-1009**

RE:   Freedom of Information Act Appeal No. 05-1442  (Appeal from Denial of
Request No. 2005-01707, made by Public Defender Service for the District of
Columbia, dated December 8, 2005)

Dear Ms. Jones:

This is a follow-up letter to the attached Freedom of Information Act Appeal, Number 05-1442. The Public Defender Service (PDS) mailed this appeal to your office on March 25, 2005. On April 8, 2005, you sent a letter stating that your office had received the appeal on April 4, 2005. In that letter you also stated that your office would "notify [PDS] of the decision on [PDS'] appeal as soon as we can." You did not claim that PDS' FOIA appeal presented any unusual circumstances that justified an extension of time to respond to PDS' appeal, nor did you provide a date certain by which you would respond to PDS' appeal. *See* 5 U.S.C. § 552(a)(6)(A)(ii)(B)(extensions of time to respond to appeals are limited to statutorily defined "unusual circumstances," agency seeking extension must give a "date on which a determination is expected to be dispatched," and extensions are not to exceed 10 working days").

Since your letter of April 8, 2005, PDS has received no further communications from your office concerning PDS' appeal.

Pursuant to 5 U.S.C. § 552(a)(6)(A)(ii), you are required to make a "determination with respect to any appeal within twenty days after the receipt of such appeal (excepting Saturdays, Sundays, and legal public holidays)." By our calculation, this twenty-day period expired on May 2, 2005.

Please inform me by the close of business on May 27, 2005 of any ruling on PDS' appeal. If I do not hear from your office by that time, PDS will exercise its right to obtain review of its FOIA request from United States District Court for the District of Columbia.

My direct line is 824-2446, and my fax number is 824-2791.

Sincerely,

Catharine Easterly
Staff Attorney

# Exhibit G



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

MAY 2 5 2005

Catharine Easterly, Esq.
Public Defender Service
633 Indiana Avenue NW.
Washington, DC  20004

      Re:  Appeal No. 05-1442

Dear Ms. Easterly:

      This responds to your fax dated May 23, 2005, regarding the status of your administrative appeal from the action of the Federal Bureau of Prisons.

      Your appeal is still within our current backlog, awaiting background information from the BOP necessary to process your appeal.  The delay in adjudicating appeals under the Freedom of Information Act and Privacy Act is primarily caused by the large volume of appeals received by the Department of Justice and the particularized and individual review each appeal receives.  Upon receipt of the requested information from the BOP, your appeal will be assigned to a staff member of this Office, and completed as quickly thereafter as possible.

      I hope this information is of assistance to you, and again, request your continued patience.

                        Sincerely,

                        Priscilla Jones
                        Chief, Administrative Staff

PAJ:CIH

# Exhibit H

# PUBLIC DEFENDER SERVICE
## FOR THE DISTRICT OF COLUMBIA

BOARD OF TRUSTEES

CYNTHIA D. ROBBINS
CHAIRPERSON
JO-ANN WALLACE
VICE CHAIRPERSON
THOMAS L. BOWEN
CLAIRE M. JOHNSON
HANNAH JOPLING
KARL A. RACINE
JEFFREY D. ROBINSON
JOAN H. STRAND
DONALD R. VEREEN, JR.
MAURICIO VIVERO
ROBERT L. WILKINS

633 INDIANA AVENUE. N.W.
WASHINGTON, D.C. 20004

(202) 628-1200
(800) 341-2582
TTY (202) 824-2531

www.pdsdc.org

AVIS BUCHANAN
DIRECTOR

PETER A. KRAUTHAMER
DEPUTY DIRECTOR

February 23, 2006

Priscilla Jones
Chief, Administrative Staff
United States Department of Justice
Office of Information and Privacy
Flag Building, Suite 570
Washington, DC   20530

RE:   Freedom of Information Act Appeal No. 05-1442 (Appeal from the Denial of
Request No. 2005-01707, made by Public Defender Service for the District of
Columbia, dated December 8, 2005)

Dear Ms. Jones:

This is a final request for the expedited review of the attached Freedom of Information Act Appeal, Number 05-1442. The Public Defender Service (PDS) first mailed this appeal to your office on March 25, 2005. Freedom of Information Act Administrative Appeal, Number 05-1442, dated March 25, 2005. (Attachment 1). Your office responded on April 8, 2005 stating that the appeal would be responded to "as soon as [we] can." (Attachment 2). PDS continued to wait for a response to their initial appeal and on May 23, 2005, again requested a decision from the Department of Justice. PDS Request for Response, dated May 23, 2005. (Attachment 3). In response to this letter, we received further correspondence from your office dated May 25, 2005, stating that the appeal was "still within [our] current backlog" and that the delay in the processing of the appeal was "primarily caused by the large volume of appeals received by the Department of Justice and the particularized and individual review each appeal receives." (Attachment 4). PDS has received no decision or further correspondence from your office.

1

As previously stated in both PDS' amendment to the Freedom of Information Act Request No. 2005-01707 as well as the subsequent Appeal from the Denial of this request, the information sought from the Bureau of Prisons is directly related to the public interest in DNA exonerations and a first step toward fulfilling the President of the United States' desire to "ensure prompt DNA testing of persons who may be wrongly convicted" as codified in the Innocence Protection Act of 2004. p. 11, Presidential Initiative "Advancing Justice through DNA Technology" Dated March 2003. *See also,* D.C.'s Innocence Protection Act, D.C. Code §22-4131.

Between 1989 and today, the District of Columbia exonerated 3 inmates while the national average of exonerations per year has increased to approximately 42.[1] Most of those released from prison on a wrongful conviction were in the process of serving sentences in excess of 25 years.[2] The stark difference between the number of exonerations for DC inmates and the averages in other jurisdictions is not merely coincidental. New York and Illinois lead the pack, with approximately 50 exonerations, while other jurisdictions have exonerated between 10 and 28 inmates during this same time period, with many state averages increasing during the last 5 years. The DC system, through which offenders are placed into Federal Bureau of Prison custody to serve their sentences, scatters DC Code offenders throughout the country making the implementation of a comprehensive exoneration project more difficult. While many organizations dedicated to exoneration projects have the benefit of a nearby penitentiary to visit their clients in, DC offenders could be in any designated Bureau of Prisons facility, not only those that are relatively close to the District.[3]

From conviction to exoneration, the average time an innocent person spends in prison is 11 years. Through legislation like the D.C. Innocence Protection Act, D.C. Code §22-4131 and the federal Innocence Protection Act of 2004, Title IV of the omnibus legislation Justice for all Act of 2004, H.R. 5107, the government is committed to reducing the length of time that wrongly convicted prisoners spend in prison and correcting some of the damage done by these convictions, but these Acts cannot be given their full and intended effect until the tools and procedures contemplated are fully utilized and faithfully fulfilled by the government agencies subject to the regulations.

---

[1] Samuel R. Gross, et al., *Exonerations in the United States 1989 Through 200*, 95 J. CRIM. L. & CRIMINOLOGY 523, 555 (Winter, 2005); Akin Gump, Strauss, Hauer & Feld LLP, *First Ever Lawsuit Under the Unjust Imprisonment Statute is Filed Against District of Columbia on Behalf of Innocent Man,* at http://akingump.com/press_release.cfm?pf=1&PRESS_RELEASE_ID=360 (Detailing civil suit filed on behalf of exonerated D.C. offender Steven Dewitt); John Solomon, *Conviction Tossed on FBI Lab Misconduct,* THE ASSOCIATED PRESS, May 28, 2003 (Reporting on the exoneration of D.C. offender Anthony E. Bragdon)

[2] 77% of the exonerated individuals were serving a sentence greater than 25 years. Over 50% were either serving sentences of life imprisonment or the death penalty. *Id.* at 536

[3] DC felony offenders are placed in the custody of the Bureau of Prisons pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997. P.L. 105-33, 1997 HR 2015, Title XI, *et seq.*

Recent media attention has been paid to the five sexual assault exonerations stemming from Mary Jane Burton's well-kept forensic evidence in Virginia.[4] DNA exonerations on convictions for rape, sexual assault and sexual battery make up 36% of the total exonerations in the past 8 years and 90% of exonerations for crimes other than capital murder.[5] The need for speedy and organized implementation of post-conviction DNA testing for sex offenders is as pressing as it is relevant to the national interest of preserving our criminal justice system as a fair and impartial vehicle for justice.

In the BOP's initial denial to FOIA request, they claimed that the information requested was withheld pursuant to 5 U.S.C. §552 (b)(7)(c). BOP Denial, dated February 9, 2005, *See* Administrative Appeal No. 05-1442. As PDS addressed in their Appeal, this exemption is inapplicable since the information requested has been repeatedly considered public information, by both the Supreme Court in Smith v. Doe, 538 U.S. 84 (2003) and as advocated by the United States Government in their amicus briefs for the same case. *See generally*, U.S. Amicus Brief in Smith and U.S. Amicus Brief in Connecticut v. Doe, 538 U.S. 1 (2003). The request therefore does not qualify under the B.O.P.'s stated exemption, as 7(c) does not apply to information within the public domain. *See*, Students Against Genocide, et al. v. U.S. Dep't of State, 257 F.3d 828 (D.C. Cir. 2001).

These statistics show a disturbing pattern of cases in which common procedures relied on daily by law enforcement, such as eyewitness identification, informant testimony and confessions have repeatedly led to the conviction of innocent defendants. The Freedom of Information Act request submitted by PDS is another step in making public the result of these miscarriages of justice. The need for the prompt release of the information requested has grown even greater since our initial submission, as media attention to this issue has increased in states like Virginia, New York and Illinois, three jurisdictions that have organizations devoted to post-conviction DNA testing or government officials who are attempting to structure and gain support for such systematic testing.[6]

The combination of amplified media attention to and the substantial public interest in post-DNA exonerations and the "exceptional need" of an inquest into the prolonged wrongful incarceration of innocent defendants supports this request for immediate review of Appeal No.05-1442 and establishes a "compelling need" for an expedited decision under both FOIA's stated regulations, as well as in the Department of Justice's own administrative code at 28 C.F.R,

---

[4] *See.*, Julie Bykowicz, *New Hope for the Wronged*, THE BALTIMORE SUN, December 29, 2005 (Of 31 samples randomly tested from those preserved by Mary Jane Burton, 2 resulted in exonerations, leading Governor Mark Warner to order the testing of the remaining samples)

[5] Gross, et al. at 529

[6] *See*, The Innocence Project *at* http://www.innocenceproject.org; The Center on Wrongful Convictions at Northwestern Law School *at* http://www.law.northwestern.edu/wrongfulconvictions/; Michael D. Shear and Jamie Stockwell, *DNA Tests Exonerate 2 Former Prisoners: VA. Governor Orders Broad Case Review*, THE WASHINGTON POST, Thursday, December 15, 2001; A01 (Reporting on the exonerations of 2 inmates based on DNA evidence preserved by the late Mary Jane Burton and the subsequent statement by former Gov. Mark Warner ordering the retesting of 660 boxes of evidence).

§16.5 (d) (1) (iii)(iv) (stating that "Requests and appeals will be…given expedited treatment whenever it is determined that they involve: (iii) the loss of substantial due process rights; or (iv) a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence"). *See also,* 5 U.S.C. § 552 (a)(6)(E)(i)(I); ACLU v. DOJ, 321 F. Supp. 2d 24, 31 (D.D.C. 2004) (The Court finds that although "newsworthiness alone" does not make a matter urgent, the combination of newsworthiness and pending legislative changes and projects does fulfill this test under the Freedom of Information Act). The denial of liberty to an innocent person is undoubtedly an urgent matter, and the already burdensome process of exoneration should not be unduly lengthened.[7] The information PDS' Freedom of Information Act requested from the Bureau of Prisons is specifically and narrowly aimed at beginning this cumbersome process.

We ask that the Department of Justice make a ruling on Freedom of Information Act Administrative Appeal, Number 05-1442 by March 16, 2006, 15 working days from the date of this correspondence. If no response is received, PDS will have exhausted all administrative remedies and will file a complaint against the Department of Justice and the Bureau of Prisons in the United States District Court for the District of Columbia.

If there are any questions regarding this correspondence, please contact me at 202-824-2523, or Sara Brin, a law clerk in the Special Litigation Division, at 202-824- 2462.

Sincerely,

Timothy O'Toole
Chief, Special Litigation Division

Lisa Guffey
Staff Attorney, Special Litigation Division

Sara Brin
Law Clerk, Special Litigation Division

---

[7] *See,* Michelle Washington, *Review of DNA Evidence Could Take Two Years,* THE VIRGINIAN-PILOT, February 8, 2006 (Predicting that DNA testing of all old case files in the Virginia state lab could take up to 2 years); *see also,* Gross et al. at 535 (Stating that the current average time period between conviction and exoneration is over 11 years).

# Exhibit I



**U.S. Department of Justice**

Office of Information and Privacy

Telephone: (202) 514-3642

Washington, D.C. 20530

**MAR 0 6 2006**

Timothy O'Toole, Esq.
Chief, Special Litigation Division
Public Defender Service for the
  District of Columbia
633 Indiana Avenue, NW
Washington, DC 20004

Re:   Appeal No. 05-1442
      Request No. 2005-01707
      JGM:JTR

Dear Mr. O'Toole:

    You appealed from the action of the Federal Bureau of Prisons on your request for a copy of "a list of all D.C. offenders convicted of serious sexual offenses and currently incarcerated in the Federal BOP."

    After carefully considering your appeal, I have decided to affirm the BOP's action on your request.

    The BOP properly withheld this information because it is protected from disclosure under the Freedom of Information Act pursuant to 5 U.S.C. § 552(b)(7)(C).  This provision concerns records or information compiled for law enforcement purposes, the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties.  I have also determined that this material is not appropriate for discretionary release.

    If you are dissatisfied with my action on your appeal, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B).

                    Sincerely,

                    Daniel J. Metcalfe
                    Director

                    By
                    Janice Galli McLeod
                    Senior Counsel